# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

March 3, 2014

Mr. Mark Wolfe
Executive Director
Texas Historical Commission
Post Office Box 12276
Austin, Texas 78711-2276

Opinion No. GA-1045

Re:  The Texas Historical Commission's implementation of House Bill 500, relating to a tax credit for the rehabilitation of certified historic structures  (RQ-1149-GA)

Dear Mr. Wolfe:

You ask about the Texas Historical Commission's (the "Commission") implementation of House Bill 500, enacted by the Eighty-third Legislature.[1]  You tell us that the bill, "which establishes a tax credit for certified rehabilitation of certified historic structures, includes two dates for implementation," and you ask the following questions regarding the tax credit program:

> 1. Does the Texas Historical Commission have the authority to begin reviewing applications for the tax credit prior to January 1, 2015, the effective date of this section of the bill?
>
> 2. May the Commission issue certificates of eligibility prior to January 1, 2015?
>
> 3. Is denial of a certificate of eligibility subject to appeal, and if so, is this appeal a contested case under Tex. Gov't Code ch. 2001?
>
> 4. May property owners whose qualifying historic structures are placed in service between September 1, 2013 and January 1, 2015, claim the credit?

---

[1]*See* Letter from Mr. Mark Wolfe, Exec. Dir., Tex. Historical Comm'n, to Honorable Greg Abbott, Tex. Att'y Gen. at 1 (Aug. 30, 2013), http://www.texasattorneygeneral.gov/opin ("Request Letter").

5. Would costs and expenses incurred by an owner prior to either September 1, 2013 or January 1, 2015 be eligible for the credit?

6. To what tax year may credits for periods prior to January 1, 2015 be applied, if any?

7. Is it necessary that the owner of the property be subject to the franchise tax, or may a homeowner, nonprofit corporation, or other non-taxable entity make use of the credit through its sale or assignment to a taxable entity?

Request Letter at 1.

The franchise tax is imposed on taxable entities doing business in the state or chartered or organized in the state. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 437 (Tex. 2011). House Bill 500 concerns many different aspects of the franchise tax. *See* Act of May 26, 2013, 83d Leg., R.S., ch. 1232, 2013 Tex. Gen. Laws 3104, 3104–12 ("H.B. 500"). Relevant here, section 14 of H.B. 500, codified as subchapter S of Chapter 171 of the Tax Code, creates a new tax credit for "certified rehabilitation of certified historic structures." H.B. 500 § 14(a), at 3109–11; TEX. TAX CODE ANN. §§ 171.901–.909 (West Supp. 2013) (subchapter S). An entity that is qualified to receive the credit must first request a certificate of eligibility from the Commission. TEX. TAX CODE ANN. §§ 171.902–.904 (West Supp. 2013). The entity must forward the certificate of eligibility, along with other documentation, to the Comptroller's Office to claim the tax credit. *Id.* § 171.904(c).

Several important dates are relevant. H.B. 500 is generally effective on January 1, 2014, "except as otherwise provided." H.B. 500 § 20, at 3111. Subchapter S is effective on January 1, 2015. H.B. 500 § 14(b), at 3111. Within subchapter S, the qualifications for the tax credit require that the "rehabilitated certified historic structure" be placed in service on or after September 1, 2013. TEX. TAX CODE ANN. § 171.903(1) (West Supp. 2013). These various dates give rise to your questions, which we address together where possible.

We address your sixth question first because the answer to it informs the answer to several of your other questions. The general rule is that a law does not speak until its effective date. *Norton v. Kleberg Cnty.*, 231 S.W.2d 716, 718 (Tex. 1950); *see also Calvert v. Gen. Asphalt Co.*, 409 S.W.2d 935, 938 (Tex. Civ. App.—Austin 1966, no writ) (recognizing that an act of the Legislature "performs no function whatsoever until its effective date"). By H.B. 500's terms, subchapter S is not effective until January 1, 2015. H.B. 500 § 14(b), at 3111. Thus, the new tax

credit for rehabilitated certified historic structures created by subchapter S is not operative until January 1, 2015. Accordingly, the tax credit may not be applied prior to the 2015 tax year.[2]

An entity may qualify for the tax credit if the "rehabilitated certified historic structure is placed in service on or after September 1, 2013." TEX. TAX CODE ANN. § 171.903(1) (West Supp. 2013). The September 1, 2013 date is merely a date, prior to the tax credit's effective date, used to determine whether an entity qualifies for the tax credit; it does not impact subchapter S's effective date. Thus, in answer to your fourth question, property owners whose qualifying historic structures are placed in service between September 1, 2013 and January 1, 2015 are eligible for the tax credit, but not until the 2015 tax year.

Your fifth question involves costs and expenses incurred prior to either September 1, 2013 or January 1, 2015. The tax credit incorporates "eligible costs and expenses incurred in the certified rehabilitation of a certified historic structure as provided by" the subchapter. *Id.* § 171.903; *see also id.* § 171.901(4) (defining "eligible costs and expenses"). Subchapter S does not limit the eligible costs and expenses based on when they were incurred; its date limitation to qualify for the tax credit requires only that the structure be placed in service on or after September 1, 2013. *Id.* § 171.903(1). Thus, any costs and expenses, whenever incurred, that are "eligible costs and expenses" under the statute would be eligible for the tax credit, but not until the 2015 tax year.

Your first and second questions involve the Commission's authority prior to January 1, 2015. Section 2001.006 of the Government Code provides that

> [i]n preparation for the implementation of legislation that has become law but has not taken effect, a state agency may adopt a rule or take other administrative action that the agency determines is necessary or appropriate and that the agency would have been authorized to take had the legislation been in effect at the time of the action.[3]

TEX. GOV'T CODE ANN. § 2001.006(b) (West 2008). Section 2001.006 limits that power, however, so that a rule adopted under 2001.006(b) "may not take effect earlier than the legislation being implemented takes effect." *Id.* § 2001.006(d). An administrative action taken

---

[2] In briefing submitted to this office, the Comptroller of Public Accounts agrees that the tax "credits cannot be created for periods prior to January 1, 2015." Brief from William S. Hamner, Director, Tax Admin., Tex. Comptroller of Pub. Accounts at 2 (Sept. 24, 2013) (on file with the Op. Comm.).

[3] Section 2001.006(a)(2) enumerates factors by which to determine whether legislation has "become law." TEX. GOV'T CODE ANN. § 2001.006(a)(2) (West 2008).

under that section "may not result in implementation or enforcement of the applicable legislation or rule before the legislation or rule takes effect." *Id.* The Commission is authorized to adopt rules to implement the new tax credit. TEX. TAX CODE ANN. § 171.909 (West Supp. 2013). Under section 2001.006, it may adopt rules or take administrative action relating to the new tax credit prior to the January 1, 2015 effective date of subchapter S. *See* TEX. GOV'T CODE ANN. § 2001.006(b) (West 2008). However, under section 2001.006(d), any rule may not take effect earlier than January 1, 2015, and any administrative action may not result in implementation or enforcement of the statute. *See id.* § 2001.006(d). Accordingly, in response to your first question, the Commission has authority to review applications prior to January 1, 2015, provided that doing so does not involve the implementation of an administrative rule. In response to your second question, the Commission may not issue certificates of eligibility prior to January 1, 2015, because, unlike reviewing applications, issuing certificates would constitute implementation or enforcement of the statute prior to its effective date.

With regard to your third question, no provision in subchapter S provides for an appeal of the Commission's denial of an application for a certificate of eligibility. *See generally* TEX. TAX CODE ANN. §§ 171.901–.909 (West Supp. 2013). A court would likely conclude that the Administrative Procedure Act also does not provide a means of appealing the Commission's actions in this context. *See Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 180 (Tex. App.—Austin 2013, no pet.) (considering Commission's denial of application regarding historical marker and recognizing that no judicial review of the denial was created indirectly through the Administrative Procedure Act "because the right of judicial review provided therein applies only to final decisions in contested cases" and that the Commission proceeding was not a contested case).

Although no statute authorizes an appeal of the Commission's denial of a certificate of eligibility, property owners whose applications are wrongfully denied are not without judicial recourse. Subchapter S imposes a mandatory duty on the Commission to issue certificates of eligibility to qualifying applicants. *See* TEX. TAX CODE ANN. § 171.904(b) (West Supp. 2013) ("The Commission shall issue . . . ."); TEX. GOV'T CODE ANN. § 311.016(2) (West 2013) (providing that the term "shall" usually imposes a duty). Thus, if a property owner who met the statutory criteria for a certificate of eligibility was nevertheless denied the certificate, the property owner may be entitled to mandamus relief ordering the Commission to issue a certificate. *See In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (orig. proceeding) (discussing required elements for mandamus relief). In the alternative, Texas courts may recognize a so-called *ultra vires* claim for declaratory relief if the Commission acts outside its legal authority on a matter in which it has no discretion. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 370–77 (Tex. 2009) (discussing *ultra vires* exception to sovereign immunity in a declaratory judgment action). We caution, however, that whether any particular legal claim is available in a given case is not a question we can answer here.

Relevant to your last question, section 14 expressly authorizes an "entity that incurs eligible costs and expenses" to "sell or assign all or part of the credit . . . to one or more entities." H.B. 500 § 14(a), at 3110–11 (codified at TEX. TAX CODE ANN. § 171.908(a)); *see also id.* (authorizing resale of sold credit). Section 14 utilizes the term "entity" in all provisions providing for the new tax credit. *See* H.B. 500 § 14(a), at 3109–11 (codified at TEX. TAX CODE

ANN. §§ 171.902, .903, .904, .906, .907, .908). Unlike chapter 171 as a whole, which utilizes the terms "taxable entity" and "passive entity" to determine the applicability of the franchise tax, section 14 does not utilize language limiting those entities that can qualify for the tax credit to taxable entities. *See* TEX. TAX CODE ANN. §§ 171.001 (West 2008) (imposing franchise tax on taxable entities), 171.0002 (West Supp. 2012) (defining "taxable entity"), 171.0003 (West 2008) (defining "passive entity"); *see also FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 885 (Tex. 2000) (relying on principle of statutory construction that the Legislature knows how to enact laws effectuating its intent). The distinction in the language suggests that entities able to apply for the credit may not be the same as those claiming the credit. Further, there is no provision in section 14 that expressly limits the tax credit to only taxable entities. *See generally* H.B. 500 § 14(a), at 3109–11 (codified at TEX. TAX CODE ANN. §§ 171.901–.909). For these reasons, we conclude that the tax credit created by section 14 is available to entities that are not subject to the franchise tax. This conclusion does not render the tax credit useless because an entity that is not a taxable entity, though unable to claim the credit against the franchise tax, could still benefit by selling or assigning the credit to a taxable entity that could. *See id.* H.B. 500 § 14(a), at 3110–11 (codified at TEX. TAX CODE ANN. § 171.908 (providing for the sale or assignment of the credit).

## S U M M A R Y

The new tax credit for rehabilitated certified historic structures created in House Bill 500, to be codified in the Tax Code at chapter 171, subchapter S, is not operative until the 2015 tax year. Thus, the new tax credit may not be applied in years prior to 2015.

An entity whose qualifying rehabilitated certified historic structure is placed in service between September 1, 2013 and January 1, 2015 may be eligible for the new tax credit, but not until the 2015 tax year. Similarly, "eligible costs and expenses" associated with the rehabilitated certified historic structure, whenever incurred, would be eligible for the new tax credit, but not until the 2015 tax year.

The Commission has authority to review applications prior to January 1, 2015, provided that doing so does not involve the implementation of an administrative rule. The Commission may not issue certificates of eligibility prior to January 1, 2015, because issuing certificates, unlike reviewing applications, would constitute implementation or enforcement of the statute prior to its effective date.

The new tax credit is not limited to taxable entities. It may be claimed and transferred by an entity that owns a rehabilitated certified historic structure even if the entity is not subject to the franchise tax.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee